UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN AUTO GUARDIAN , INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 05 C 6404 |
| v. | ) |
| | ) Judge George M. Marovich |
| | ) |
| SHERRI KRAMER and | ) |
| HARRY G. KRAMER III, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff American Auto Guardian, Inc. ("AAG") filed a six-count second amended complaint against defendants Sherri Kramer ("Sherri" or "Kramer") and Harry G. Kramer, III ("Harry"). In the amended complaint, AAG asserts claims under the Racketeer Influenced and Corrupt Practices Act ("RICO") and several common-law torts. Plaintiff moves for summary judgment on each of its claims. For the reasons set forth below, the Court grants in part and denies in part plaintiff's motion for summary judgment.

**I.    Background**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. Where one party supports a fact with admissible evidence and the other party fails to respond, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This does not, however, absolve the party who asserted a fact of

its initial burden of putting forth admissible evidence to support its fact. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

In this case, the defendants failed to respond to plaintiff's statement of material facts, and the Court has been informed by plaintiff's counsel that defendants do not intend to respond. Accordingly, the Court now considers plaintiff's motion for summary judgment without any response by defendants. The Court has carefully reviewed the record and has deemed admitted only those facts asserted by plaintiff that plaintiff supported with admissible evidence. The following facts are undisputed.

Sherri Kramer, with some assistance from her husband Harry, embezzled nearly half a million dollars from AAG over the course of four years. AAG discovered the embezzlement, which started soon after Kramer was hired, only after Kramer's employment with AAG ended.

AAG markets and administers vehicle-service contracts (which pay for repairs to covered automobiles), vehicle GAP insurance (which, in the event of the total loss of a vehicle, covers any difference between the payoff amount due on a vehicle loan and the amount of an insurance settlement) and coverage for excess wear and tear on leased vehicles. AAG markets the products to automobile dealers, who sell them in connection with vehicle purchases. AAG was founded by President Al Ranieri ("Ranieri") and two other people in February 1998.

AAG hired Kramer in April 1999 as a part-time Finance Manager in charge of cash management. Her duties and responsibilities greatly increased over time. Initially, Kramer was responsible for keeping accounting records, issuing checks on AAG's account to pay corporate expenses and maintaining AAG's corporate credit cards, which it used to pay repair shops in

connection with its vehicle service contracts. By November 1999, Kramer was also in charge of human resources. By September 2001, Kramer was a full-time employee, was promoted to Assistant Secretary and Vice President and was put in charge of the accounting department. Soon, she was also in charge of compliance and sales and marketing. By March 2003, Kramer was a Director of AAG.

AAG continued to grow rapidly and, by the summer of 2005, Ranieri decided it was time to put someone with a finance background (which Kramer lacked) in charge of accounting. Ranieri was also dissatisfied with Kramer's management of the sales and marketing department. On July 18, 2005, Ranieri informed Kramer that she was no longer in charge of accounting, human resources or sales and marketing. Although she was being demoted rather than discharged, an upset Kramer "stormed out" of AAG's office and never returned.

The new Finance Director, James Devers ("Devers") jumped in where Kramer left off, and it was not long before he discovered Kramer's embezzlement. When Kramer left, she had been in the middle of sending quarterly profit-sharing bonuses to agents and dealers. Devers picked up the project and noticed records suggesting one agent had been paid twice. He investigated further and learned that the AAG accounting records showed two checks to the one agent but that the second check was, on its face, written out to "Bosley Design and Imaging." AAG had, in the past, done business with a Bosley Design, but that Bosley Design had been dissolved several years earlier. Devers discovered, from the back of the check, that it had been deposited into an account at TCF National Bank ("TCF"). From TCF, Devers learned that the account into which the check was deposited was opened by Harry Kramer, who was also the authorized signer on the account. When Harry opened the account, he provided TCF the address

of a post office box in Schaumburg, Illinois, and TCF mailed bank statements for the account to "Bosley Design" at that address.[1] AAG continued to investigate, and it discovered (1) that Sherri Kramer had issued 64 separate checks between October 19, 2001 and June 24, 2005 to Bosley Design and (2) that those checks were deposited into Harry's account at TCF. The total amount of checks issued by Sherri Kramer and deposited by Harry was $285,264.22. Kramer covered up the checks in AAG's "QuickBooks" accounting software by entering in the accounting software a payee different from the one she put on the actual check she issued.

Kramer did not stop with issuing checks to be cashed by her husband. Kramer also regularly used AAG's corporate credit cards to purchase things for the benefit of herself and her family. Kramer made 155 unauthorized purchases for herself and her family from July 2, 2001 to March 2005. Among other things, Kramer charged to AAG's credit cards ski vacations, a down payment on a Honda Pilot, iPods, computers, printers, cameras, speakers, dinners, lunches, airline tickets and jewelry. Kramer also used her position at AAG to issue checks drawn on AAG accounts to pay the credit cards charges. In total, Kramer's personal purchases on AAG's credit cards added up to $71,151.90.

In the beginning, it was easy for Kramer to cover up her personal credit card purchases. She was in charge of reconciling the credit card account statements mailed from the bank. In the QuickBooks software, Kramer described her personal purchases as business-related purchases. For example, when Kramer charged five round-trip plane tickets to Vail, Colorado for her family, she described the purchase in QuickBooks as "Deposit for NADA Convention," NADA

---

[1]Plaintiff asserts that wires or the mails were used to transfer funds from AAG's account at LaSalle Bank to Harry's account at TCF, but that fact was not supported by admissible evidence, so that fact is not considered by the Court.

being the National Auto Dealers Association. As Kramer grew busier and delegated more responsibilities, it became more difficult for Kramer to disguise her personal credit card charges. She sometimes told the staff she would do the reconciliation herself. Other times, she removed the incriminating pages from the credit card bills, told her staff those portions were confidential, and did the reconciliation of those pages herself. Sometimes, she intercepted the mailed bills, downloaded a list of the charges from the credit card companies' websites into a spreadsheet and then changed the name of the vendors before giving the spreadsheets (rather than the bills themselves) to her staff to reconcile.

AAG used its credit cards regularly to pay for the vehicle repairs it owed on its vehicle service contracts. Accordingly, it accumulated vast quantities of reward points, which Kramer used–without permission–as her own. For example, in the first half of 2005, Kramer made a series of purchases totaling $19,455.25 on AAG's Merrill Lynch credit card for a ski vacation her family took to Canada. Kramer then contacted Merrill Lynch (either by the telephone or via the internet) to redeem 1,292,134 of AAG's reward points to pay for the $19,455.25 she had charged. This was not the only time Kramer redeemed AAG's points for her own benefit. She redeemed 2,917,127 of AAG's American Express reward points to pay for golf clubs, cameras and gift certificates (for, among others, the Gap, Home Depot and Toys R Us). The value of the American Express reward points Kramer redeemed without permission was $28,371. To redeem the American Express points, Kramer used the telephone and the internet.

In addition to the sums outlined above, Kramer also embezzled $34,363.53 worth of cash, merchandise and gift certificates. Among these were two checks (one for $6,153.09 and one for $5,291.00) that Kramer wrote to herself on AAG's accounts. Kramer also reimbursed herself for

expenses that were either personal or not incurred. These improper reimbursements were for such things as a fabricated $3,000 party cancellation fee, personal cell phone usage and personal computer equipment.

## II. Summary Judgment Standards

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

### A. RICO § 1962(c) claim

Plaintiff brings Count I against defendants Sherri Kramer and Harry Kramer for civil violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et. seq. Congress passed RICO to "eradicate organized, long-term criminal activity." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). The statute provides a civil cause of action for violations of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . "). Despite

"widespread abuse" of civil RICO, RICO "has not federalized every state common-law cause of action available to remedy business deals gone sour." *Midwest Grinding*, 976 F.2d at 1025. "Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006).

Here, AAG claims that Sherri and Harry violated RICO § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Thus, in order to prevail, AAG must show that Sherri and Harry each (1) conducted or participated in the conduct of (2) an enterprise (3) through a pattern of (4) racketeering activity. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998).

### 1. Enterprise

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The victim, itself, can be the enterprise for RICO purposes. *See United States v. Warner*, 498 F.3d 666, 696 (7th Cir. 2007) (noting that many RICO enterprises are the victims, rather than the perpetrators, of schemes); *LaSalle Bank Lake View v. Seguban*, 937 F. Supp. 1309, 1323 (N.D. Ill. 1996) (victim bank properly alleged that it was the RICO enterprise).

Here, AAG argues that it was the RICO enterprise. That suffices.

### 2. Conducting or participating

Next, AAG must show that Sherri and Harry each "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). The Supreme Court has explained what it means to conduct or participate in the conduct of an enterprise. To be liable, one must "have some part in directing" the affairs of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). The Seventh Circuit has explained that "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Goren*, 156 F.3d at 728.

AAG easily shows that Sherri conducted its affairs. Sherri was a Director of AAG. She was also in charge of three departments: accounting, sales and marketing, and human resources. AAG has shown that she conducted its affairs.

AAG fails to make the showing with respect to Harry. Although AAG has shown that Harry was involved in the schemes to defraud AAG, he never engaged in any efforts that could be deemed the conduct of the enterprise. Accordingly, AAG is not entitled to summary judgment with respect to Count I against Harry.

### 3. Pattern

A "pattern of racketeering activity" is "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(f). To establish a pattern under RICO, "it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing*

activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989). As the Supreme Court has explained:

> 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by providing a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*H.J. Inc.*, 492 U.S. at 241-242. Conduct without the threat of continued activity is not actionable. *Gamboa v. Velez*, 457 F.3d 703, 709 (7th Cir. 2006). There, the Seventh Circuit explained:

> Since, as the district court recognized, the amended complaint's allegations foreclosed any threat of continued criminal activity, the natural and commonsense result here is dismissal–the amended complaint cannot support the continuity element. Restated, when, as here, a complaint explicitly presents a distinct and non-reoccurring scheme with a built-in termination point and provides no indication that the perpetrators have engaged or will engage in similar misconduct, the complaint does not sufficiently allege continuity for § 1962(c) purposes even if the purported scheme takes several years to unfold, involves a variety of criminal acts, and targets more than one victim.

*Gamboa*, 457 F.3d at 709.

Here, Sherri Kramer engaged in a series of at least three schemes over the course of four years. In the first scheme, Sherri used her position within the enterprise to issue (and cover up) checks that her husband Harry deposited into an account he opened and for which he was the signer. Over four years, Sherri issued 64 checks for $285,254.22 that were deposited into her husband's account. In the second scheme, Sherri used AAG credit cards to make personal purchases and then issued checks drawn on AAG accounts to pay off the credit cards. Over the course of four years, Sherri charged $71,151.90 worth of personal expenses (included iPods,

-9-

airline tickets, meals and a down payment on an automobile) to AAG credit cards. In the third scheme, Sherri redeemed AAG's credit card reward points for her own benefit. Over time, she redeemed $28,371.00 worth of credit cards points for merchandise and gift cards and redeemed $19,455.25 worth of credit card points to pay for ski vacation expenses she charged to an AAG credit card. The Court concludes that these schemes constitute a pattern of closed-end continuity, because of the multiple, related schemes over a long period of time (four years). *See Equity Residential v. Kendall Risk Mgt.*, Case No. 04 C 3812, 2005 WL 1026686 at *8 (N.D. Ill. April 12, 2005) ("Five years constitutes a 'substantial period of time' as required for close-ended continuity"). Furthermore, although the schemes ended after four years, they included hallmarks of a scheme that would have continued. Sherri's embezzlement continued right up until the day she left AAG. It is not as though she set out to embezzle until a set date, such as a pre-determined retirement date. She had not intended to quit the day she quit; she stormed out in a moment of anger when she was told she was being demoted. The circumstances of her end date and the schemes themselves suggest that the schemes would have continued if AAG had not demoted Sherri. Accordingly, the conduct constitutes a pattern for purposes of RICO.

The pattern, still, must be a pattern of *racketeering* activity. Racketeering activity includes a number of indictable offenses, including the oft-cited mail and wire fraud. 18 U.S.C. § 1961(a). The elements of mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343 are: (1) the defendant's participation in a scheme to defraud; (2) defendant's intent to defraud; and (3) defendant's use of the mails or wires in furtherance of the fraudulent scheme. *United States v. Radziszewski*, 474 F.3d 480, 484-485 (7th Cir. 2007). It suffices if the defendant acted with knowledge that use of wires or mail would occur in the ordinary course of business or

if the use was reasonably foreseeable. *United States v. Ratliff-White*, 493 F.3d 812, 818 (7th Cir. 2007).

AAG has shown that the schemes constituted racketeering activity. First, Sherri's scheme to use AAG's credit card reward points defrauded AAG, because she lacked permission to redeem $47,826.25 worth of AAG's reward points for her personal use. Sherri used the wires in furtherance of the scheme when she used the internet and the telephone to contact the credit card companies to redeem the credit card points. In addition, Sherri used the wires to further her scheme to use AAG's credit cards for personal expenses. Specifically, in an effort to cover her tracks, she used the internet to download credit card bills in spreadsheet form so that she could change the vendor names to make her personal charges look like business charges. Once she had changed the vendor names, she provided the altered spreadsheets to other employees who reconciled the charges. Finally, the scheme to embezzle AAG's money by issuing checks to Bosley Design required the use of the mails. When he signed up for the "Bosley Design" account at TCF (the account into which Harry deposited the Bosley Design checks Sherri improperly issued on AAG's account), Harry provided an address where the bank would send bank statements. Sherri and Harry had to have known that TCF would mail statements to that address in the ordinary course of business. Those mailings furthered the scheme because Sherri and Harry needed the account to appear legitimate in order to continue depositing checks into the account. TCF might have become suspicious and closed the account if the statements were undeliverable. *See United States v. Lack*, 129 F.3d 403, 408 (7th Cir. 1997) ("The mailings in this case . . . helped to conceal [defendant's] fraudulent scheme. . . . [Defendant] opened the [bank account] under a name virtually identical to that of his employer and provided the bank

with a mailing address for his 'business' to which the monthly statements were mailed. . . . With respect to the bank, the mailing address deceived the bank by creating the impression that the account holder was a legitimate business.").

Accordingly, AAG has shown that defendant Sherri Kramer violated RICO § 1962(c), and it is entitled to judgment as a matter of law against Sherri Kramer on Count I. AAG has shown that it was damaged in the amount of $404,242.37 by Kramer's pattern of racketeering, and the Court awards AAG treble damages in the amount of $1,212,727.11.

**B.     RICO § 1962(d) claim**

In Count VI, AAG asserts against Harry Kramer a RICO claim under § 1962(d). That section provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). The "touchstone" of liability under § 1962(c) is "an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998). To state a claim under § 1962(d), AAG must show "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Goren*, 156 F.3d at 732. In a footnote, the Seventh Circuit further explained, "[o]f course, a plaintiff is not required to allege that the defendant agreed to participate in the operation or management of the conspiracy; rather, it is sufficient for a plaintiff to allege that the defendant agreed to participate in the affairs of the enterprise." *Goren*, 156 F.3d at 732 n. 9.

Here, AAG has named itself as the enterprise. It has not (and, presumably, cannot) show that Harry agreed to participate in the affairs of AAG. Unlike Sherri, Harry never worked for AAG. Accordingly, AAG is not entitled to judgment as a matter of law on Count VI, and the Court denies AAG's motion for summary judgment with respect to Count VI.

### C. Breach of fiduciary duty

In Count II, plaintiff asserts that Kramer breached her fiduciary duty when she embezzled $438,606.25. Under Illinois law, AAG can establish a breach of fiduciary duty by showing a) the existence of a fiduciary duty; b) breach of that duty; and c) damages. *LaSalle Bank Lake View v. Seguban*, 937 F. Supp. 1309, 1324 (N.D. Ill. 1996). Employees, officers and directors owe a duty of loyalty to their employer under Illinois law. *Beltran v. Brentwood North Healthcare Center, LLC*, 426 F. Supp.2d 827, 831 (N.D. Ill. 2006). Embezzlement of one's employer's funds is a classic example of breach of fiduciary duty. *See Beltran*, 426 F. Supp.2d at 831, *Seguban*, 937 F. Supp. at 1324.

Here, AAG has put forth undisputed evidence that Kramer was not just an employee but also a Director of AAG. As such, she owed a fiduciary duty to AAG. Furthermore, the evidence is undisputed that Kramer breached that duty by embarking on a four-year course of embezzlement of AAG funds. Accordingly, AAG is entitled to judgment as a matter of law on Count II.

Next, the Court considers the appropriate damages for Count II. AAG has put forth undisputed evidence that Kramer's breach of fiduciary duty damaged it in the amount of $438,606.25. Much of that amount ($404,242.37) was already awarded to AAG in Count I. Accordingly, the Court now awards AAG the remainder ($34,363.88) of the amount Kramer

embezzled.  In addition, AAG seeks forfeiture of the salary it paid Kramer.  Under Illinois law, "one who breaches fiduciary duties has no entitlement to compensation during a wilful or deliberate course of conduct adverse to the principal's interests." *ABC Trans Nat'l Transport, Inc. v. Aeronautics Forwarders, Inc.*, 90 Ill.App.3d 817, 838, 413 N.E.2d 1299, 1315 (1st Dist. 1980).  Accordingly, the Court orders Kramer to forfeit her salary from the period of July 2, 2001 to July 18, 2005 and, hence, awards AAG additional compensatory damages in the amount of $323,785.14.  Although AAG also seeks punitive damages, the Court declines to award punitive damages because counsel has informed the Court that Kramer has been incarcerated, which sufficiently serves the punitive purpose.

### D. Common-law fraud

In Count III, AAG asserts a claim for common-law fraud against defendant Sherri Kramer.  Under Illinois law, the elements of common-law fraud are:  "(1) a false statement of material fact; (2) knowledge or belief by the maker of the statement that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by plaintiff; and (5) damages as a result of the reliance." *Northwestern Neurosurgical Associates v. Esteves*, Case No. 94 C 153, 1996 WL 164930 at *2 (N.D. Ill. April 2, 1996).

Here, AAG claims that Kramer made a series of misstatements in order to embezzle AAG's funds.  AAG has put forth undisputed evidence that Kramer entered false accounting records, changed accounting records and submitted false invoices.  The Court is not convinced, however, that AAG has shown as a matter of law that it reasonably relied on the misstatements. True, Kramer, herself, was in charge of issuing checks on AAG's account based on her own misstatements.  That might constitute AAG's vicarious reliance on Kramer's misstatements, but

the Court is not convinced that that reliance is reasonable as a matter of law. A reasonable jury might conclude that AAG should have used controls to lessen the possibility that the sole person in charge of accounting and bill-paying would not abuse the position.

Accordingly, the Court cannot conclude that AAG is entitled to judgment as a matter of law on Count III. The Court denies plaintiff's motion for summary judgment with respect to Count III.

### E. Conspiracy to defraud

In Count IV, AAG asserts that defendants Sherri and Harry conspired to defraud AAG. To prevail, AAG must show: "(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud." *Bosak v. McDonough*, 192 Ill.App.3d 779, 803, 549 N.E.2d 643, 646 (1st Dist. 1989). A conspiracy is "a combination of two or more persons to accomplish by concerted action an unlawful purpose or a lawful purpose by unlawful means." *Id.*

In this case, AAG has shown as a matter of law that Sherri and Harry conspired to defraud AAG. AAG has put forth undisputed evidence that Harry opened a bank account at TCF National Bank in the name of Bosley Design. AAG further established that Sherri issued 64 improper checks to "Bosley Design" on AAG's account and covered her trail by listing a different payee in AAG's accounting software. AAG further established that Harry deposited those checks into the Bosley Design account he had opened. Accordingly, AAG has established that Harry and Sherri conspired to defraud AAG of $285,254.22, and AAG is entitled to judgment as a matter of law on Count IV. AAG has not, however, established as a matter of law that Harry and Sherri conspired with respect to Sherri's embezzlement of other AAG funds. The

Court hereby awards AAG $285,254.22, an amount for which defendants Sherri Kramer and Harry Kramer are jointly and severally liable.

### F. Conversion

In Count V, AAG asserts that defendants Sherri and Harry converted AAG's money. To establish conversion, AAG must show that "(1) [it] has a right to the property; (2) [it] has an absolute and unconditional right to the immediate possession of the property; (3) [it] made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 184 Ill.2d 109, 703 N.E.2d 67, 70 (Ill. Sup. Ct. 1998).

Here, AAG has failed to put forth evidence on which it has the burden of proof. Specifically, AAG has failed to put forth evidence that it made a demand for possession. AAG does not point out any such evidence in its brief, and the Court does not find any evidence in the record. Because AAG bears the burden of proof on this element, AAG is not entitled to judgment as a matter of law on Count V. Accordingly, the Court denies AAG's motion for summary judgment with respect to Count V.

## IV. Conclusion

For the reasons set forth above, the Court grants in part and denies in part plaintiff's motion for summary judgment. Plaintiff AAG is granted summary judgment on Count I with respect to defendant Sherri Kramer. Plaintiff AAG is denied summary judgment on Count I with respect to defendant Harry Kramer. Plaintiff AAG is granted summary judgment on Counts II and IV. Plaintiff AAG is denied summary judgment on Counts III, V and VI.

Plaintiff AAG is awarded damages against Sherri Kramer in the amount of $1,507,876.13, of which amount Sherri Kramer is jointly and severally liable with Harry Kramer for $285,254.22. Plaintiff AAG is awarded damages against Harry G. Kramer III in the amount of $285,254.22, for which Sherri Kramer is jointly and severally liable.

This case is set for status on July 22, 2008 at 11:00 a.m.

ENTER:

_____
George M. Marovich
United States District Judge

DATED: July 8, 2008